# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASON PASCALE,<br><br>Plaintiff,<br><br>v.<br><br>OCEAN MEDICAL CENTER, et al.,<br><br>Defendants. | Civil Action No. 19-19312 (FLW)<br><br><br><br>MEMORANDUM OPINION |

*Pro se* Plaintiff, Jason Pascale ("Plaintiff"), a convicted state prisoner presently incarcerated at Southern State Correctional Facility, in Delmont, New Jersey, has filed a *pro se* Complaint alleging violations of his civil rights under 42 U.S.C. § 1983.[1] (*See* ECF No. 1.) At this time, the Court will grant Plaintiff's application to proceed *in forma pauperis*. (ECF No. 1-1.)

Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B).

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the standard for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir.

---

[1] On November 6, 2019, a submission by Plaintiff was docketed in this matter. The submission includes a civil complaint form for the Superior Court of New Jersey and other documents used for filing a civil complaint in state court. The Court does not construe these forms as an amended complaint in this action and makes no determination regarding whether Plaintiff could seek relief in state court.

1

2012). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the Court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The instant Complaint purports to raise civil rights claims pursuant to 42 U.S.C. § 1983 arising from a prison counselor's denial of Plaintiff's request to visit his dying father in February 2019 while Plaintiff was housed at Columbus House. At that time, Plaintiff's father was hospitalized with double pneumonia and was placed in the ICU on life support at Ocean County Medical Center in Brick, New Jersey. According to the Complaint, Ms. Ickles, a counselor at the Columbus House, denied Plaintiff's visit request because Ocean Medical Center would not say that Plaintiff's father was "terminal[.]" (*See* ECF No. 1 at 4.) Plaintiff's father passed away a week later, *id.* at 6, and personnel at Columbus House did not notify him about his father's passing until four days later. *Id.* at 7. Plaintiff has sued Columbus House, GEO Reentry Services, which operates Columbus House, Ocean County Medical Center, and the "Social Services Department in Charge of Prisoner Visits[.]" *See* ECF No. 1. Based on the facts pleaded

in the Complaint, the Court also construes Plaintiff to sue Ms. Ickles, the counselor at Columbus House who denied the family visit.[2]

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'" *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)). To establish a claim under § 1983, Plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

The exact contours of Plaintiff's civil rights claims are not clear. In light of his *pro se* status, the Court liberally construes Plaintiff to assert that Defendants denied Plaintiff's procedural Due Process right to visit his dying father and/or his first Amendment right to intimate association.

Plaintiff's Due Process claim fails irrespective of whether the Court construes it as the denial of a family visit or the denial of a furlough. The Due Process Clause applies when government action deprives a person of liberty or property." *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Liberty interests protected by the clause may arise from the Due Process Clause itself, or arise from state-created rights. *See Sandin v. Conner*, 515

---

[2] Because he is seeking damages, the Court construes Plaintiff to sue Ms. Ickles in her individual capacity only.

U.S. 483-84 (1995). The liberty interests created by the state in the prison context, however, "will be generally limited to freedom from restraint which ... imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. It is well established that the denial of a family visit is not an atypical and significant hardship and does not give rise to a protected liberty interest. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) ("The denial of prison access to a particular visitor is 'well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause.") (internal quotation marks and citation omitted); *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2001) ("[I]t is well-settled that prisoners have no constitutional right while incarcerated to contact visits or conjugal visits.") (collecting cases). The Third Circuit has also held that a prisoner does not have a constitutional right to receive a furlough to visit his ailing child. *See Groppi v. Bosco*, 208 F. App'x. 113, 115 (3d Cir. (2006); *see also Spuck v. Ridge*, 347 F. App'x. 727, 730 (3d Cir. 2009)(quoting *Bowser v. Vose*, 968 F.2d 105, 106–07 (1st Cir.1992) ("It is clear that the denial of a furlough implicates no inherent liberty interest"). Other courts have similarly found that the Due Process Clause does not provide prisoners with a "liberty interest in attending a family member's funeral, and denial of such an opportunity does not impose an atypical or significant hardship on the inmate in relation to the normal incidents of prison life." *Ramziddin v. Plousis*, No. 07–5868, 2008 WL 906341, at * 4 (D.N.J. Apr.1, 2008); *see also Mills v. Walker*, No. 05–1744, 2005 WL 2807171, at *5 (D.N.J. Oct. 25, 2005); *Griggs v. New Jersey*, No. 11–2673, 2011 WL 3739375, at * 4 (D.N.J. Aug. 24, 2011); *Baker v. Department of Corrections*, 2015 WL 5227458, at *3 (D.N.J. 2015).

Under the relevant New Jersey statute, prisoners, in the discretion of the correctional institution, may be permitted to be at the bedside of a dying relative. *See* N.J.S.A. 30:4–8.1;

N.J.A.C. 10A:18–7.2. Although New Jersey does permit furloughs to visit a dying relative in limited circumstances, the decision to grant a furlough is entirely within the discretion of the chief executive officer of the prison in which an inmate is housed; as such, neither New Jersey law nor administrative regulations have created a liberty interest protected by the Due Process clause. *See Mills*, 2005 WL 280717 at \*5; *see also* N.J. Stat. Ann. § 30:4–8.1 ("the chief executive of any penal or correctional facility ... may in his discretion, and in conformity with the rules and regulations of the State ... authorize and permit the attendance of a prisoner or inmate at the bedside or funeral of a dying or deceased relative"); N.J. Admin Code § 10A:18–7.2 (pursuant to the statute, "the correctional facility Administrator may, at his or her own discretion, authorize and permit the attendance of an inmate at the bedside of a dying relative, or at a private viewing, when no relatives or friends are present, of a deceased relative").

Because Plaintiff lacks a protected liberty interest in his request to visit his dying father, the procedural protections of the Due Process Clause do not apply, and the Court will dismiss without prejudice Plaintiff's procedural Due Process claims against all Defendants.

The Court also construes Plaintiff to assert that he was denied his constitutional right to intimate association. Prisoners retain a limited constitutional right to intimate association, established by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, 95–96 (1987), and confirmed in *Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003). Nevertheless, "freedom of association is among the rights least compatible with incarceration," and some curtailment must be expected in the prison context. *Overton*, 539 U.S. at 131. In *Overton*, the Supreme Court found that the challenged prison regulations that, among other things, severely restricted noncontact visitation by prisoners' minor relatives, withstood constitutional scrutiny under the four-part test of *Turner v. Safley*, 482 U.S. at 89. *Overton* suggests that limits on family visits with a prisoner may violate

that rule if "permanent or for a [long] period" or if "applied in an arbitrary manner." 539 U.S. at 137.

"To the extent that a 'right' to visitation exists via the right to association, this entitlement is limited by prison officials' judgment in furthering penological goals." *Rivera v. Fed. Bureau of Prisons*, 197 F. App'x. 169,170 (3d Cir. 2006) (citing *Overton v. Bazzetta*, 539 U.S. at 131-32). Affording substantial deference to the professional judgment of prison administrators, *Overton*, 539 U.S. at 132, courts will uphold a prison official's action alleged to have impinged on an inmate's constitutional rights if "it is reasonably related to legitimate penological interests," *Turner*, 482 U.S. at 89.

Here, Plaintiff does not provide facts suggesting that the prison regulations regarding visits with dying relatives, as detailed above, are arbitrary, unrelated to legitimate penological interests, or otherwise so restrictive that they violate Plaintiff's right to intimate association. As such, Plaintiff's right to intimate association claim is dismissed without prejudice as to all Defendants.

The Court also notes that entities like Columbus House and GEO Reentry Services, which appear to provide prison services on behalf of the state, cannot be found liable simply because they employ wrongdoers. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691-92 (1978); *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583 (3d Cir. 2003). For such an entity to be found liable under § 1983, Plaintiff must assert in the Complaint facts showing that the entity had a relevant policy or custom, and that this policy or custom caused a violation of Plaintiff's constitutional rights. *See Natale*, 318 F.3d at 583-84; *accord Jiminez v. All American Rathskeller, Inc.*, 503 F. 3d 247, 249 (3d Cir. 2007) (stating that a plaintiff must show a "direct causal link between a . . . policy or custom and the alleged

constitutional deprivation.") (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Here, Plaintiff has not alleged a policy or custom, causing the harm alleged. As such, any constitutional claims against Columbus House and GEO Reentry Services would also be subject to dismissal for failure to allege a relevant policy or custom.

In addition, Ocean County Medical Center (and/or its personnel) appears to be a private party and therefore is only liable under § 1983 if it can "fairly said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). There are no factual allegations to suggest that Ocean County Medical Center is a state actor, and the Complaint against Ocean County Medical Center is subject to dismissal on this basis as well.[3]

Although the Court doubts that Plaintiff can cure the deficiencies in his Complaint, it will provide him with leave to submit an amended Complaint within 30 days of the date of this Order. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (holding that in civil rights cases, the Court must allow amendment, unless doing so would be inequitable or futile).

For the reasons explained in this Memorandum Opinion, the Complaint is dismissed in its entirety as to all Defendants. Plaintiff may submit an Amended Complaint within 30 days to the extent he can cure the deficiencies in his federal claims. An appropriate Order follows.

---

[3] Plaintiff mentions in the Complaint that he believes his father may have died through medical negligence and/or malpractice on the part of Ocean County Medical Center and/or its staff. The Court does not construe Plaintiff to assert a medical negligence claim on behalf of his deceased father in this civil rights action. Such a claim would be subject to dismissal, as "a *pro se* litigant who is not an attorney may not represent someone else in federal court." *See McCain v. Abraham*, 337 F. App'x. 141, 142 (3d Cir. 2009) (citing *Osei–Afriyie v. Med. Coll. of Penn.*, 937 F.2d 876, 882 (3d Cir. 1991)). Furthermore, because the Court has dismissed Plaintiff's federal claims, it would decline supplemental jurisdiction over any possible state law claims. *See* 28 U.S.C. § 1367(c)(3).

|                          | *s/Freda L. Wolfson*       |
|                          | Freda L. Wolfson           |
|                          | U.S. Chief District Judge  |

DATED: January 8, 2020